IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| K.W.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:23-CV-2887-BR |
| | § | |
| MARTIN O'MALLEY, | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION,[2] | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT**

Pursuant to 42 U.S.C. § 405(g), Plaintiff K.W. ("Plaintiff") seeks judicial review of the

decision of the Commissioner of Social Security ("Defendant"), who denied Plaintiff's

applications for disability insurance benefits under Title II and for supplemental security income

under Title XVI of the Social Security Act ("SSA") for lack of disability. (ECF 1 at 1). The parties

voluntarily consented to have the undersigned conduct all proceedings in this case to disposition

in accordance with the provisions of 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73.

Before the Court is Plaintiff's Amended Motion for Summary Judgment, (ECF 13), Defendant's

Response, (ECF 19), and Plaintiff's Reply (ECF 20). After considering the pleadings, briefs, and

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is "automatically substituted" for Kilolo Kijakazi as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

administrative record, the Court DENIES Plaintiff's Amended Motion for Summary Judgment and

AFFIRMS the decision of the Commissioner (ECF 13).

## I.   BACKGROUND

Plaintiff filed a claim for Title II disability and disability insurance benefits on June 5,

2020, alleging disability due to: polysubstance abuse disorder; major depressive disorder; a spine

disorder-cervical and lumbar spondylosis; carpal tunnel syndrome; neuropathy; asthma; nicotine

dependence disorder; hypertension; insomnia; and high cholesterol. (ECF 13 at 5). Plaintiff alleged

an onset date of February 1, 2020. (*Id.*). Plaintiff was born on November 24, 1970, was 49 years

old at the time he filed his claim, and has at least an eleventh-grade education. (ECF 9-1 at 347).

Plaintiff's application was initially denied on April 8, 2021, (ECF 9-1 at 71-72), and was

denied again upon reconsideration on October 8, 2021. (*Id.* at 113-114). Plaintiff requested a

hearing, which was held before the Administrative Law Judge ("ALJ") on March 2, 2023. (*Id.* at

41-70). The ALJ issued an unfavorable decision on May 9, 2023, finding Plaintiff not disabled

under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 14-34).

At step one of the five-step sequential evaluation,[3] the ALJ found that the claimant had not

engaged in substantial gainful activity since February 1, 2020, the alleged onset date. (ECF 9-1 at

---

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

20). At step two, the ALJ found that Plaintiff has several "severe impairments": polysubstance abuse disorder, major depressive disorder, a spine disorder-cervical, and lumbar spondylosis. (*Id.*). At step three, however, the ALJ found that Plaintiff's impairments—or combination of impairments—did not meet or medically equal the severity of any listed impairment in the social security regulations. (*Id.* at 20-22). At step four, the ALJ determined that Plaintiff is unable to perform past relevant work as a stacker. (*Id.* at 27). At step five, the ALJ determined that, considering the claimant's age, education, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.* at 27). The ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore is not disabled within the meaning of the Social Security Act. (*Id.* at 28).

The Appeals Council denied Plaintiff's request for review on November 29, 2023. (ECF 11-1 at 1-6). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.   STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is defined as a work activity involving

significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's

decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.

1990).

### III.    DISCUSSION

In his Amended Motion for Summary Judgment, Plaintiff requests that this Court find that

he is entitled to social security disability benefits and supplemental security income benefits or

reverse and remand this case for further hearing. (ECF 13 at 1). In his Brief in Support of his

Amended Motion for Summary Judgment, Plaintiff asserts four grounds for reversal and remand:

1) the ALJ erred in omitting evidence of use of an assistive-device limitation in the RFC and the

decision is not supported by substantial evidence; 2) the ALJ failed to reconcile the conflict

between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles

("DOT") with regard to reaching requirements; 3) the ALJ erred in determining that Plaintiff's

cervical, lumbar, and thoracic spine, neuropathy, and right-sided weakness are not medically

determinable impairments; and 4) the ALJ committed reversible error because he failed to resolve

patent conflicts between the VE's testimony and the DOT regarding the reaching limitation

required by the adopted occupations. (*See* ECF 13). Plaintiff's second and fourth points of error

significantly overlap, and the Court will address those together. *See infra* Section III.B.

**A.  The ALJ did not err in omitting evidence of use of an assistive-device limitation in the RFC.**

Plaintiff first argues that the ALJ erred in omitting evidence of use of an assistive-device

limitation in the RFC. (ECF 13 at 8-18). The court, therefore, must review the record to determine

whether it "yields such evidence as would allow a reasonable mind to accept the conclusion

reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The RFC assessment is

based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical

history, medical signs and laboratory findings, the effects of treatment, reports of daily activities,

lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE or into the RFC determination for which he did not find support in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ as factfinder has the sole responsibility for weighing the evidence, and the relative weight to be given to these pieces of evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). "[A]n ALJ need not consider an assistive walking device in the RFC assessment unless the device is medically necessary." *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 871-72 (S.D. Tex. 2022) (citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). To find a hand-held assistive device is medically necessary, "there must be medical documentation establishing the need for the hand-held device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The ALJ must also consider the particular circumstances of a case. *Id.* Again, the Commissioner's findings are conclusive as long as they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

Here, the ALJ stated that "[t]here is no evidence that the claimant medically requires an assistive device that involves the use of both hands, nor is there evidence that the claimant has an inability to use one upper extremity and requires an assistive device using the other upper extremity . . . ." (ECF 9-1 at 21). Plaintiff testified at the hearing on this matter that he uses a cane for standing and walking. (ECF 9-1 at 23). The ALJ did, however, find that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely

consistent with the medical evidence and other evidence in the record." (ECF 9-1 at 27). Medical records reflect that in 2019 and 2020, Plaintiff's gait was described as "normal," "stable," "steady," and "unassisted." (ECF 9-1 at 593, 758). In May 2021, the record reflects that Plaintiff was "ambulatory with steady gait." (ECF 9-1 at 1559). In a Function Report filled out by Plaintiff on July 27, 2021, in response to the prompt: "Do you use any of the following? *(Check all that apply)*," Plaintiff did not check the "Cane" or "Walker" boxes, and only filled in that he took "pain pills" and "muscle relaxers." (ECF 9-1 at 382). Dr. Harar Yusuf performed a consultative exam in January 2021, and noted that Plaintiff had a "normal range of motion" but walked with a slow gait. (ECF 9-3 at 1523). The ALJ found this opinion persuasive. (ECF 9-1 at 1522-24). Medical records reflect that in November 2022, Plaintiff exhibited "functional mobility without an assistive device" while admitted to the hospital. (ECF 9-3 at 2083). During the same hospital stay, progress notes by a treating physician reflect that physical therapy recommended use of a cane. (ECF 9-1 at 2075). The care plan presented by the physical therapy team at the conclusion of Plaintiff's hospital stay notes that Plaintiff was educated on durable medical equipment—presumably, a cane—and that a physician or non-physician practitioner approved the plan of care. (ECF 9-1 at 2092). Progress notes again reflect that physical therapy recommended use of a cane in January 2023. (*Id.* at 2180). As Defendant notes, the "records which do mention a cane are all dated during Plaintiff's hospitalizations in late 2022, and early 2023 for right sided weakness," and that "in January 2023, [Plaintiff's] chronic right-sided weakness was considered stable with Gabapentin." (ECF 19 at 3-4).

The Court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion" that an assistive device is not medically necessary in the instant case. *Biestek*, 139 S. Ct. at 1154. The ALJ, after weighing the evidence presented in

Plaintiff's medical records, along with testimony from the Plaintiff and the opinions of medical experts,[4] concluded that an assistive device was not medically necessary, and permissibly excluded it from the RFC. *See Myers v. Barnhart*, 285 F. Supp. 2d 851, 862 (S.D. Tex. 2002) (holding that the ALJ's finding that the claimant was not disabled was supported by substantial evidence, when the claimant was not medically prescribed an assistive device, but chose to use a cane on her own); *Stewart v. Colvin*, No. 1:12-CV-039-BL, 2013 WL 1979738, at *5 (N.D. Tex. May 14, 2013) (finding no error when the ALJ failed to incorporate the use of a cane in a claimant's RFC because the record contained no evidence regarding the medical basis for the cane and there was "no physician's report regarding specific medical restrictions requiring [the claimant] to use an assistive device"). The record reflects that although physical therapists may have recommended use of a cane to Plaintiff, and Plaintiff elects to use one, there is also substantial evidence in the record to provide sufficient support for the ALJ's finding that the use of a cane is not medically necessary in this case.

---

[4] To the extent Plaintiff argues that the ALJ committed reversible error by failing to address the treatment notes offered by Dr. Nainesh Jashvant Shah, Dr. Patrick William Green, occupational therapist Tracy Barrileaux, and physical therapist Haley Ann Schoenberger, the statements by these practitioners reflect treatment notes from Plaintiff's November 2022 hospital stay. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in a claimant's ability to perform, among other things, the physical and mental demands of work activities, such as sitting, standing, walking, lifting, remembering, and maintaining concentration. 20 C.F.R. § 404.1513(a)(2). Other medical evidence includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). The notes referenced by Plaintiff fall into the latter category; they do not reflect statements from medical sources about what Plaintiff can still do despite his impairments, or his ability to perform work-related tasks, and are not medical opinions. (ECF 13 at 12); *see Melinda N.C. v. O'Malley*, 2:22-CV-00058-LRS, 2024 WL 268389, at *8-9 (E.D. Wash. Jan. 24, 2024); *Mooney v. Kijazaki*, No. 2:22-cv-35-KS-LGI, 2023 WL 6319329, at *4 (S.D. Miss. July 31, 2023), *report and recommendation adopted*, No. 2:22-cv-35-KS-LGI, 2023 WL 6302166 (S.D. Miss. Sept. 25, 2023).

**B.  The ALJ properly reconciled the conflict between VE testimony and the DOT with regard to reaching requirements.[5]**

Plaintiff argues that the ALJ failed to reconcile the conflict between VE testimony and the DOT with regard to the reaching requirements of the jobs offered by the VE. (ECF 13 at 19). Plaintiff asserts that "the ALJ found that the VE's testimony was consistent with the DOT. However, nothing in the record explains how these jobs can be performed by someone who is limited to only occasional reaching overhead. Nor is there anything to suggest that either the VE or the ALJ was actually aware of the conflict with the DOT requirements." (*Id.* at 39-40).

During the administrative hearing, the ALJ asked the VE whether a hypothetical person the same age as Plaintiff, with the same educational background, work history, transferable skills, and RFC as Plaintiff could perform jobs present in the national economy. (ECF 9-1 at 64). The VE testified that this person could perform jobs as a Retail Marker, Photocopy Machine Operator, and Storage Facility Rental Clerk. (*Id.* at 64-65). However, the VE added that there is a conflict between the Plaintiff's RFC and the DOT job descriptions for these positions. (*Id.*). Although Plaintiff's handling, fingering, hand controls, and reaching overhead with the left are all "frequent," he is limited to occasional reaching overhead with the right arm. (*Id.* at 64). The DOT states, however, that all of the positions provided by the VE require frequent reaching. *See* U.S. Dep't of Labor, *DOT*, 209.587-034 (1991 WL 671802), 207.685-014 (1991 WL 671745), and 295.367-026 (1991 WL 672594) (4th ed., rev. 1991). The DOT defines reaching as "extending hand(s) and arm(s) in any direction," and jobs described as requiring frequent reaching—including those above—are therefore in conflict with a limitation to occasional overhead reaching with the right arm. *Selected Characteristics of Occupations Defined in the Revised Dictionary of*

---

[5] Plaintiff makes this argument twice: first, in Section II of his brief, (ECF 13 at 19-25), and second, in Section IV of his brief, (*Id.* at 32-41). The Court addresses both arguments here.

*Occupational Titles ("SCO")*, App'x C. Physical Demands (1993); *see* SSR 85-15. The VE

testified that "the DOT and SCO don't tease out reaching overhead for reaching in all directions,"

and testified that in her "estimation [the jobs listed above] could be done even with right occasional

overhead [reaching]," because "[r]eaching overhead is the least direction people usually reach."

(*Id.* at 64-65). When asked if her testimony was consistent with the DOT, the VE testified "yes,"

that her opinion was consistent with the DOT. (*Id.* at 65). In his written decision, the ALJ stated:

> "I have determined that the VE's testimony is consistent with the information
> contained in the DOT. Where it is not so, in terms of the requirement of frequent
> reaching with the claimant being capable of only occasional reaching, the VE's
> testimony that the claimant could perform the above jobs is based on her extensive
> knowledge of how the above jobs are generally performed. I find this persuasive."

(ECF 9-1 at 28).

SSR 00-4p clarifies the Social Security Administration's standards for considering the

testimony of VEs. *See* SSR 00-4p, 2000 WL 1898704. When testimony provided by a VE conflicts

with information provided in the DOT, the ALJ is required to "[i]dentify and obtain a reasonable

explanation for any conflicts . . . . [and] [e]xplain in the determination or decision how any conflict

that has been identified was resolved." *Id.* at *1. SSR 00-4p notes that "[t]he DOT lists maximum

requirements of occupations as generally performed, not the range of requirements of a particular

job as it is performed in specific settings. A VE… may be able to provide more specific information

about jobs or occupations than the DOT." *Id.* at *3. Courts are not to give DOT job descriptions

"a role that is exclusive of more specific vocational expert testimony with respect to the effect of

an individual claimant's limitations on his or her ability to perform a particular job." *Carey v.

Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). "[T]he ALJ may rely upon the vocational expert's

testimony provided that the record reflects an adequate basis for doing so." *Id.* at 146. An ALJ

may permissibly rely on a VE's testimony where it was based on professional knowledge and

experience. *See Clement v. Kijakazi*, No. 22-479, 2022 WL 19073969, at \*11 (E.D. La. Oct. 6, 2022) (finding that, where a VE's testimony conflicted with the DOT, the ALJ did not err in relying on the VE's opinion when the VE based her opinion on "professional knowledge, experience, training, and education"), *report and recommendation adopted*, No. 22-479, 2023 WL 2540330.

Here, the ALJ noted the conflict between the VE's testimony and the DOT and then obtained a reasonable explanation for the conflict: the VE's "extensive knowledge of how the jobs are generally performed." (ECF 9-1 at 28). In her testimony, the VE stated that it was her estimation—presumably based on her professional experience and familiarity with the pertinent job markets—that the jobs listed could be done even with limited overhead reaching with the right arm. (ECF 9-1 at 64-65). The ALJ complied with the process laid out in SSR 00-4p; he identified a conflict between the VE's testimony and the DOT and was provided a "reasonable explanation" for the conflict: the professional opinion of the VE. (*Id.*); SSR 00-4p (noting that a reasonable explanation for a conflict may be information about a particular job's requirements obtained by a VE's experience). The VE is, by definition, an expert in vocational matters and has specialized knowledge about the unique requirements of the specified jobs. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (noting that a vocational expert uses her expertise or knowledge concerning the demands of work); *see also Dell v. Saul*, 807 F. App'x 385, 386 (5th Cir. 2020); *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). The ALJ accepted this explanation for the conflict and relied on the VE's testimony as to which jobs Plaintiff is capable of performing. (ECF 9-1 at 28). When a VE's testimony conflicts with the DOT, "the ALJ may rely on the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The Court finds that the record does reflect an adequate basis for relying on the testimony of the VE, when that testimony was based on the VE's professional experience and

familiarity with the listed jobs. Therefore, the Court finds that the ALJ did not err in relying on the VE's testimony to determine which jobs Plaintiff was capable of performing.

### C. The ALJ did not err in determining that Plaintiff's cervical, lumbar, and thoracic spine, neuropathy, and right-sided weakness are not medically determinable impairments. Even if he did err, the error is harmless.

Finally, Plaintiff asserts that the ALJ failed to evaluate the intensity and persistence of Plaintiff's symptoms as it relates to his neuropathy and right-sided weakness to determine the extent to which his symptoms limit his availability to perform work-related activities. (ECF 13 at 25-32). Plaintiff also argues that his "cervical, lumbar and thoracic spine are medically determinable impairment [sic]." (*Id.* at 27). Plaintiff argues that had the ALJ recognized and considered these impairments in combination with his other impairments, his entire determination could have been different. (*Id.* at 30).

In determining a claimant's RFC, an ALJ considers the functional limitations of medically determinable impairments. *See* SSRs 83-10, 96-8. "[T]he plaintiff bears the ultimate burden of establishing disability at all times." *Marcos v. Comm'r, Social Sec. Admin.*, No. 3:09-CV-319-M (BF), 2010 WL 3000804, at *4 (N.D. Tex. June 21, 2010), *report and recommendation adopted*, No. 3:09-CV-319-M (BF), 2010 WL 2989999 (N.D. Tex. July 28, 2010). Therefore, it is Plaintiff's burden to prove that his cervical, lumbar, and thoracic spine preclude his ability to perform light work with limitations. *Id.* In his written decision, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p." (ECF 9-1 at 28); *see Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (not published) ("[The ALJ's] decision states expressly that it was made '[a]fter careful consideration of all the evidence,' and we see no reason or evidence to dispute his assertion.").

"The ALJ is not required to show that the RFC is compatible with all of a claimant's self-reported symptoms, but instead to evaluate that testimony in the context of objective medical evidence and determine the remaining capacity for work." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at \*4 (N.D. Tex. June 19, 2019), *report and recommendation adopted*, No. 1:18-CV-042-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). In order to set aside this determination, "Plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ." *Id.*

Additionally, even if Plaintiff is correct that the ALJ erred by failing to consider the Plaintiff's "cervical, lumbar and thoracic spine," neuropathy, and right-sided weakness as severe impairments, this does not end the analysis. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "[I]f the ALJ proceeds past step two, we consider whether the error was harmless . . . . Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Id.* The burden of showing that an error is harmful[6] typically falls on the Plaintiff. *Shineski v. Sanders*, 556 U.S. 396, 409 (2009).

First, with respect to Plaintiff's argument that his "cervical, lumbar and thoracic spine" are medically determinable impairments, the ALJ did in fact find that Plaintiff's "spine disorder-

---

[6] In his reply brief, Plaintiff argues, seemingly for the first time, that the ALJ used the incorrect standard in determining whether an impairment or combination of impairments is "not severe." (ECF 20 at 14). In the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985). Courts in this district consistently hold that this standard "provides no allowance for even a minimal interference with a claimant's ability to work." *Jacquelyn S. v. Comm'r of Soc. Sec. Admin*, No. 3:18-cv-01022-L-BT, 2019 WL 4359412, at \*2 (N.D. Tex. Aug. 27, 2019), *report and recommendation adopted*, No. 3:18-cv-01022-L-BT, 2019 WL 4318885 (N.D. Tex. Sept. 12, 2019); *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009); *Craaybeek v. Astrue*, No. 7:10-CV-054-BK, 2011 WL 539132, at \*6 (N.D. Tex. Feb. 7, 2011) (determining the "minimal effect" standard is "wholly inconsistent with *Stone*"); *but see Flowers v. Berryhill*, No. 7:16-cv-135-O-BP, 2017 WL 2257596, at \*4 (N.D. Tex. Apr. 18, 2017) (finding "minimal effect" standard was not an improper statement of the law), *report and recommendation adopted*, No. 7:16-cv-135-O-BP, 2017 WL 2225411 (N.D. Tex. May 22, 2017). Rather, the *Stone* standard requires a finding of "severe" if the impairment interferes with the individual's ability to work at all. *Jacquelyn S.*, 2019 WL 4359412, at \*2. However, as Plaintiff notes, "procedural perfection is not required unless it affects the substantial rights of a party." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per

cervical and lumbar spondylosis" was a severe impairment. (ECF 9-1 at 20). Although the ALJ

did not specifically discuss the Plaintiff's thoracic spine in making his determination, he did

discuss in significant detail the symptoms associated with Plaintiff's spinal issues,[7] and included

limitations in his RFC analysis that account for those issues. (*Id.* at 17-28). Plaintiff notes that the

record shows that "Plaintiff's thoracic spine has a rightward curvature, mild Scoliosis, and

multilevel disc vertebral degenerative changes . . . . [and] mild sequelae of chronic microvascular

ischemic disease." (ECF 20 at 15). Plaintiff, however, has not demonstrated what—if any—

additional limitations would be necessary or what symptoms were not accounted for, given the

fact that the ALJ already determined that Plaintiff's spine disorder-cervical and lumbar

spondylosis is a severe impairment resulting in limitations. (*See* ECF 9-1 at 20). The ALJ reviewed

the evidence in the record, including the evidence of Plaintiff's thoracic spinal issues, and found

that:

> "the claimant's MDIs could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity,
> persistence, and limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record . . . . [and] the limitations
> alleged by the claimant that find support within the objective medical record have
> been accommodated for by the above RFC assessment."

---

curiam). Where an ALJ applied the improper standard, but the error was harmless, remand is not required. *Jacquelyn S.*, 2019 WL 4359412, at *3. Even if, as Plaintiff suggests, the ALJ applied an incorrect standard to the severity requirement, no remand is required, because the error was harmless. The ALJ clearly and explicitly applied limitations due to the "claimant's neck and back pain" associated with his "right-sided weakness and neuropathy." (ECF 9-1 at 26). Therefore, the ALJ adequately considered and accounted for Plaintiff's limitations resulting from these impairments, and the result would not have changed if the ALJ used a different standard.

[7] The ALJ discussed Plaintiff's spinal issues in his opinion as follows: "Physically, the claimant stated he suffers from neck and back pain. He stated his neck pain moves into his arms and into his fingers, which become numb. The claimant also reported that his back pain goes down into his right leg and make his foot numb. He confirmed using a cane for standing and walking, and that he could only stand for 20 to 30 minutes and walk a block, both with a cane." (ECF 9-1 at 23). "The claimant reported being independent in meal preparation, management of money, transferring from bed to chair, eating, bathing, dressing, and grooming but noted his legs get paralyzed." (*Id.* at 25). "I appreciate how imaging of the cervical and lumbar spine has revealed minimal findings of moderate degenerative spondylosis at C5-C6 and mild degenerative spondylosis at L5-S1 . . . and that the consultative exam of Dr. Harar Yusef noted a normal range of motion in the cervical and lumbar spine, no cervical or lumbar muscle spasms . . . ." (*Id.* at 26).

14

(ECF 9-1 at 27). Plaintiff has not demonstrated that—even if the ALJ erred in not finding Plaintiff's cervical, lumbar, and thoracic spine to be medically determinable impairments—the analysis would have changed. Plaintiff's symptoms, which were all considered by the ALJ, would have remained the same, and were adequately considered in the ALJ's evaluation of Plaintiff's severe impairment relating to his spine. An ALJ's error is harmless "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Steven K. v. Kijakazi*, No. 3:20-cv-01655-G-BT, 2022 WL 1056920, at \*8 (N.D. Tex. Jan. 19, 2022). Here, based on Plaintiff's allegations and the evidence provided, a different administrative conclusion would not have been reached had the ALJ considered Plaintiff's cervical, lumbar, and thoracic spine to be medically determinable impairments.

Second, as to Plaintiff's assertion that the ALJ erred by failing to consider Plaintiff's right-sided weakness and neuropathy as medically determinable impairments, the ALJ specifically considered and provided limitations for both in his RFC. (ECF 9-1 at 26). Although Doctors Leigh McCary and Jeanine Kwin determined in their DDS Physical Assessments that Plaintiff was capable of a full range of light work, the ALJ found that "the claimant's neck and back pain warrant additional postural, manipulative, and environmental limitations as described . . . to address his right-sided weakness and neuropathy that is treated with Gabapentin." (ECF 9-1 at 26). The ALJ further referenced Dr. Harar Yusuf's consultative exam, which demonstrated "a normal range of motion in the cervical and lumbar spine, no cervical or lumbar muscle spasms, 5/5 grip strength, 5/5 bilateral upper and lower extremity strength, and intact cranial nerves." (*Id.*). The ALJ stated that this opinion was persuasive and consistent with the medical record as a whole, which "fails to reflect any consistent treatment for the alleged disabling physical impairments," and determined that a reduction to sedentary work was not justified based on the record. (*Id.*). The ALJ

demonstrated that after his review of these three medical opinions, in conjunction with the larger medical record as a whole, Plaintiff is capable of performing light work with certain limitations, as previously discussed. In doing so, the ALJ properly exercised his authority to determine the credibility and weight given to each opinion. *See, e.g.*, *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).

Even if Plaintiff were correct that "the ALJ never evaluated the intensity and persistence of the Plaintiff's symptoms as it relates to his neuropathy and right-sided weakness to determine the extent to which his symptoms limit his ability to perform work related activities," this would not change the analysis. The ALJ specifically addressed the limitations Plaintiff faces because of these issues, and added limitations to the RFC to address these issues. Plaintiff has failed to show that "no reasonable person could find support in the record for the RFC assessed by the ALJ." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *report and recommendation adopted*, No. 1:18-CV-042-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019). Even had the ALJ determined that Plaintiff's neuropathy and right-sided weakness were medically determinable impairments, the analysis would not have changed; the symptoms would remain the same, and consideration of those symptoms would not have changed. It is "inconceivable that a different administrative conclusion would have been reached" here. *Steven K. v. Kijakazi*, No. 3:20-cv-01655-G-BT, 2022 WL 1056920, at *8 (N.D. Tex. Jan. 19, 2022). Based on Plaintiff's allegations and the evidence provided, a different administrative conclusion

would not have been reached had the ALJ considered Plaintiff's neuropathy and right-sided weakness as medically determinable impairments.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Amended Motion for Summary Judgment is DENIED and the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

ENTERED July 9, 2024.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE